RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JANE DOE,

> *Plaintiff-Appellee*,

*v.*

No. 17-3857

MICHAEL DEWINE, Ohio Attorney General, and TOM STICKRATH, Superintendent of the Ohio Bureau of Criminal Investigation, in their official capacities,

> *Defendants-Appellants*.

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:12-cv-00846—Susan J. Dlott, District Judge.

Argued:  July 26, 2018

Decided and Filed:  December 11, 2018

Before:  WHITE, DONALD, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Michael J. Hendershot, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellants.  Alexandra Naiman, OHIO JUSTICE & POLICY CENTER, Cincinnati, Ohio, for Appellee.  **ON BRIEF:**  Michael J. Hendershot, Eric E. Murphy, Stephen P. Carney, Thomas E. Madden, Mindy Worly, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellants.  Alexandra Naiman, David A. Singleton, OHIO JUSTICE & POLICY CENTER, Cincinnati, Ohio, for Appellee.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge. Defendants-Appellants Michael DeWine, Ohio Attorney General, and Tom Stickrath, Superintendent of the Ohio Bureau of Criminal Investigation, appeal the district-court judgment declaring that Ohio's sexual-offender registration and notification laws violate Plaintiff-Appellee Jane Doe's procedural due process rights because they subject her to lifetime registration requirements, which rest on an implicit finding that she remains likely to reoffend, without an opportunity to rebut that finding. We **REVERSE**.

## I. BACKGROUND

In 2006, Doe pleaded guilty to unlawful sexual conduct with a minor, in violation of Ohio Rev. Code ("O.R.C.") § 2907.04(A) (2000). She was sentenced to one year of confinement and five years of probation. At the time, Ohio's Megan's Law,[1] *id.* § 2950 *et seq.* (1996), which governed the classification, registration, and community-notification requirements for Ohio sex offenders, required the sentencing court to determine whether a person convicted of a sexually oriented offense should be classified as a "sexual predator," defined as "a person who . . . is likely to engage in the future in one or more sexually oriented offenses." *Id.* § 2950.01(E)(1). An offender so classified is subject to burdensome housing restrictions and registration and community-notification requirements. *See id.* §§ 2950.01(G), (E); 2950.07(B). Classification was based on an individualized evaluation of multiple factors set forth in § 2950.09(B)(3), conducted in light of expert-witness testimony and other evidence introduced at the classification hearing. *Id.* § 2950.09(B)(2).

The sentencing court classified Doe as a sexual predator, and that classification was affirmed on appeal. As a sexual predator, Doe is required to register with the local sheriff and

---

[1]In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act—more commonly known as the federal Megan's Law after a similar law enacted in New Jersey—which required states to adopt registration and community-notification requirements for sex offenders or risk losing federal funds. 42 U.S.C. § 14071. Ohio enacted its own Megan's Law in 1996.

provide her name and any aliases, social-security number, date of birth, current address, name and address of employer, name and address of school, locations where her vehicles are regularly parked, license-plate numbers, driver's license number, professional or occupational license numbers, email addresses, internet identifiers, and telephone numbers. *Id.* § 2950.04(C) (2007). She is additionally required to provide written notice of any changes to this information, *id.* § 2950.05 (1996), and verify, in person, the current address of her residence, school, and place of employment with the sheriff every ninety days. *Id.* §§ 2950.06(B)(1)(a) (2003); 2950.06(C)(1) (2003). And, because of her sexual-predator designation, Doe must satisfy these requirements for the rest of her life. *Id.* § 2950.07(B)(1) (2003). Failure to do so is punishable as a felony. *Id.* § 2950.99(A)(1)(a)(ii) (2011).

Doe is also subject to community-notification requirements. *Id.* § 2950.11 (2003). Local sheriffs and the Ohio Attorney General are required to disseminate Doe's registration information to the public through an internet sex-offender database. *Id.* §§ 2950.081 (2003); 2950.14(D) (2003); 2950.13(1), (11), (13) (2006). Additionally, Doe may not reside within one-thousand feet of any school, *id.* § 2950.034(A) (2007), and because she is subject to a lifetime-registration requirement under § 2950.09(D)(2) (2003), federal regulations bar her from living in federally subsidized housing. 24 C.F.R. §§ 960.204(a)(4), 982.553(a)(2)(i).

For a period of time before Doe's offense, persons classified as sexual predators had a statutory right to petition the sentencing court for a hearing to reassess their likelihood of reoffending and change their classification. O.R.C. § 2950.09(D)(1) (1996).[2] However, the Ohio legislature eliminated that right in 2003. The Ohio sexual-offender registration and notification law applicable to Doe stated that "[i]n no case shall the lifetime duty to comply . . . be removed or terminated." *Id.* § 2950.07(B)(1) (2003). It further stated that "the classification or adjudication of the offender as a sexual predator is permanent and continues in effect until the

---

[2]Such offenders could request a hearing one year "after release from imprisonment, prison term, or other confinement by discharge, parole, judicial release, or any other final release," and again every five years if denied reclassification. O.R.C. § 2950.09(D)(1)(a), (b) (1996).

offender's death and in no case shall the classification or adjudication be removed or terminated." *Id*. § 2950.09(D)(2).[3]

## II.  PROCEDURAL HISTORY

In 2012, Doe filed this 42 U.S.C. § 1983 action against the Ohio Attorney General (Attorney General), the Superintendent of the Ohio Bureau of Criminal Investigation (Superintendent), and the Sheriff of Hamilton County, Ohio (Sheriff), seeking a declaration that O.R.C. § 2950.07(B)(1) (2003) is unconstitutional because it prevents her from obtaining a hearing to demonstrate that she is no longer "likely to engage in the future in one or more sexually oriented offenses," *id.* § 2950.01(E), thus violating her procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.  Doe also seeks "an Order that a hearing be scheduled in the sentencing court to determine whether . . . Doe is currently dangerous." (R. 1, PID 9.)

In granting in part and denying in part the parties' cross-motions for summary judgment, the district court first rejected Defendants' arguments that Doe lacks standing to pursue her claim and that Defendants are entitled to Eleventh Amendment immunity.[4]  The district court then rejected Doe's substantive due process claim, concluding that Doe "has not established that being subject to Ohio's sex offender registration and notification provisions violates a

---

[3]In 2007, Ohio adopted the federally mandated Adam Walsh Act ("AWA"), which replaced the discretionary, future-risk-based assessment of an offender's classification under Megan's Law with a nondiscretionary, conviction-based classification system.  The AWA adopted a classification system based solely on the crime of conviction, not the offender's likelihood to re-offend.  O.R.C. § 2950.01(E), (F), (G) (2008).  The AWA also required that sex offenders who had been classified under the old system be reclassified under the AWA.  However, the Ohio Supreme Court struck the reclassification scheme as unconstitutional because it granted the executive the power to reopen judicially made classifications in violation of the principle of separation of powers.  *State v. Bodyke*, 933 N.E.2d 753 (Ohio 2010).  The Ohio Supreme Court also held that retroactive application of the AWA to offenders convicted before its enactment violates the state constitution's prohibition against retroactive laws.  *State v. Williams*, 952 N.E.2d 1108 (Ohio 2012).  Thus, the AWA does not affect Doe's classification.

[4]Defendants had advanced the standing and immunity defenses when they unsuccessfully moved to dismiss the action and reasserted them in their motion for summary judgment.  Defendants also unsuccessfully argued that the action should be dismissed pursuant to the separation-of-powers, collateral-attack, abstention, and res-judicata doctrines, and that the Ohio sentencing court and the housing authority were indispensable parties that Doe failed to join as required by Federal Rule of Civil Procedure 19.  On appeal, Defendants pursue only the standing and immunity defenses.

fundamental right regardless of the procedural protections provided."[5]  (R. 83, PID 758.)  The district court concluded, however, that "the failure to provide Doe with any opportunity during her lifetime to challenge her classification as a sexual predator who currently is likely to re-offend violates her procedural due process rights" because the challenged law implicates Doe's liberty and property interests in reputation and access to federally subsidized housing and because Ohio lacks a procedural mechanism for Doe to obtain a reclassification hearing to vindicate those interests.  (*Id.* at 752, 755, 756.)

The district court initially ordered additional briefing on the issue of relief because it concluded that it lacked authority to grant the requested injunction ordering a reclassification hearing.  However, at a subsequent status conference, the district court determined that further briefing was unnecessary and, without issuing the injunction, struck down O.R.C. §§ 2950.07(B)(1) and 2950.09(D)(2) as unconstitutional "to the extent they forever prohibit the removal or termination of a 'sexual predator' classification with its requirements and duties." (R. 85, PID 769.)

Defendants timely appeal.[6]

### III.  DISCUSSION

### A.  Standard of Review

This court reviews de novo a district court's summary judgment order based on purely legal grounds.  *Black v. Roadway Express, Inc.*, 297 F.3d 445, 448 (6th Cir. 2002) (citations omitted).  We also review de novo whether the Eleventh Amendment entitles a defendant to sovereign immunity, *Price v. Medicaid Dir.*, 838 F.3d 739, 746 (6th Cir. 2016) (citation omitted), and whether a plaintiff has Article III standing to bring the action, *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (citation omitted).

---

[5]Doe does not pursue her substantive due process claim on appeal.

[6]Defendant Hamilton County Sheriff James Neil appealed the district court's judgment but was later dismissed from the action pursuant to the parties' stipulation.

**B. Jurisdiction**

Before reaching the merits, we address Defendants' contention that the district court lacked subject-matter jurisdiction. Defendants claim that they are "immune from declaratory relief" under the Eleventh Amendment "because they do not enforce the restrictions from which Doe seeks relief," and that "no order against [Defendants] can redress [Doe's] claimed injury." (Appellants' Br. at 2.)

1.

Because we have held that "the Eleventh Amendment is a true jurisdictional bar," Defendants' entitlement to sovereign immunity "must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The Eleventh Amendment "deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Id*. at 1046 (citation omitted). However, under the *Ex parte Young* exception, "a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." *Price*, 838 F.3d at 746–47 (citing *Ex parte Young*, 209 U.S. 123, 159 (1908)).

Defendants contend that *Ex parte Young* is inapplicable here because, under the relevant Ohio laws, neither the Attorney General nor the Superintendent can enforce Doe's compliance—or prosecute her noncompliance—with the challenged registration requirements. *See* O.R.C. § 2950.04(A)(1)(a) (providing that a sex offender must register with the *sheriff*); *id*. § 309.08 (charging *local prosecutors* with enforcing state criminal laws). Indeed, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Russell*, 784 F.3d at 1048 (quoting *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993)). Rather, a state official must possess "some connection with the enforcement of the [challenged law]," *Ex parte Young*, 209 U.S. at 157, and must "threaten [or] be about to commence proceedings"—that is, it must be likely that the official will enforce the law against the plaintiff, *Russell*, 784 F.3d at 1048 (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)).

But Defendants' lack of direct criminal enforcement authority does not foreclose Doe's reliance on *Ex parte Young*. In *Russell*, we explained that "[e]njoining a statewide official under *Young* . . . is appropriate when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." 784 F.3d at 1048. *Russell* held that a suit to enjoin the Kentucky Attorney General, Secretary of State, and members of the State Board of Elections from enforcing a "300-foot no-political-speech buffer zone around polling locations on Election Day" fell within the *Ex parte Young* exception as to all the defendants. *Id.* at 1043. The Attorney General was plainly susceptible to suit given that he possessed "authority to prosecute [the plaintiff] for violating" the buffer-zone law and had "promised the public that [his office] would pursue possible criminal sanctions" against those who violated it. *Id*. at 1047. Although it was "a closer question" whether the Secretary of State and members of the State Board of Elections were proper defendants, we held that these defendants, too, fell within the *Ex parte Young* exception because they were "actively involved with administering the [challenged] statute." *Id.* at 1048. Specifically, the defendants' administration of the buffer-zone law included promulgating implementing regulations, authorizing exemptions, and training state and local personnel regarding how to enforce the law. *See id*. *Russell* held that these actions sufficiently affected the plaintiff so as to subject both the Secretary and the Board members to suit under *Ex parte Young*. *See id*. at 1049.

Applying *Russell*, both the Attorney General and the Superintendent fall within the *Ex parte Young* exception to Eleventh Amendment immunity. Like the Secretary of State and the Board members in *Russell*, Defendants here are "actively involved with administering" the sex-offender laws: they promulgate regulations implementing the sex-offender registration requirements; operate the state-wide sex-offender database; and send and structure community notifications that alert citizens to the proximity of registered offenders. *See* O.R.C. § 2950.13 (2014). These are "actions against [Doe's] interests," *Russell*, 784 F.3d at 1048, because they involve the dissemination of allegedly false information about her—that she remains a currently dangerous "sexual predator." There is also a "realistic probability," *id*., that Defendants will disseminate the allegedly false information about Doe; they are doing so currently. Under *Russell*, because Doe seeks to enjoin the injurious publication of her "sexual predator"

classification until she receives a due process hearing, the state officials tasked with publishing that information are subject to suit under *Ex parte Young*.

2.

Defendants also contend that Doe lacks standing to assert her challenge. "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (alteration in original) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* at 560–61 (alterations in original) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

Defendants argue that Doe fails to satisfy the third standing requirement, redressability.[7] An injury is redressable if a judicial decree can provide "prospective relief" that will "remove the harm." *Warth v. Seldin*, 422 U.S. 490, 505 (1975). The relevant standard is likelihood—whether it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 181 (2000). However, "the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment

---

[7]The first two elements of the standing inquiry are satisfied. Doe has alleged a sufficient *injury*—the publication of her "sexual predator" classification without due process—and this injury is *traceable* to Defendants because they disseminate the information via the state database and community notifications.

produces. . . ." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). "Redress is sought *through* the court, but *from* the defendant. . . . The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Id.* Thus, "[r]edressability is typically more difficult to establish where the prospective benefit to the plaintiff depends on the actions of independent actors." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015) (citation omitted).

Doe requests several forms of relief, including (1) "a declaration that [the challenged statutes] are unconstitutional for failure to provide her with a [reclassification] hearing," (Appellee's Br. at 35), (2) "an Order that a hearing be scheduled in the sentencing court to determine whether [Doe] is currently dangerous," and (3) "any and all other relief this Court finds appropriate." (R. 1, PID 9.) She argues that these remedies would redress her injuries, which she summarizes as:

> Defendants publically[sic] disseminate false information that Doe is currently dangerous, while she could prove that she is not; Doe and her children are barred from public housing because of Defendant's dissemination of this false information; Doe is also subject to community notification and must register more often than appropriate for her risk-level.

(Appellee's Br. at 34.)

We recognize that the two Defendants, the Attorney General and the Superintendent, have no power to hold a reclassification hearing for Doe or force a court to hold one. But, in addition to striking the laws as unconstitutional, the district court could order Defendants to remove Doe's information from the state-wide registry and public-facing sex-offender database they maintain, O.R.C. § 2950.13(1), (11), (13) (2006), and relieve her from any registration requirements until an opportunity for a reclassification hearing becomes available. *See United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1235 (2d Cir. 1987) ("The power of the federal courts to remedy constitutional violations is flexible. . . . [and] [w]here such a violation has been found, the court should tailor the remedy to fit the nature and extent of the violation." (citations omitted)).

To be sure, this remedy would not remove Doe's judicially imposed sexual-predator classification, nor guarantee her a hearing in state court to remove the classification, but it would remove one barrier to the hearing—the law barring it—and would remove the stigmatizing information from the Attorney General's publicly available website. *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury."). Doe would thus "personally . . . benefit in a tangible way from the court's intervention," which is sufficient to confer standing. *Warth*, 422 U.S. at 508 (footnote omitted).

## C. Procedural Due Process

### 1.

The Fourteenth Amendment provides, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause contains both a procedural and a substantive component. To present a procedural due process claim under 42 U.S.C. § 1983, the plaintiff must "show that the defendant acted under the color of state law to deprive the plaintiff of a definite liberty or property interest." *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 539 (6th Cir. 2002).

The Supreme Court addressed a procedural due process challenge to a sex-offender registration law in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003) ("*DPS*"). There, the plaintiff claimed that Connecticut's failure to provide a pre-deprivation hearing to determine a sex offender's current dangerousness before the offender's inclusion in a publicly disseminated sex-offender registry violated procedural due process. *Id.* at 3. The Supreme Court rejected the challenge:

> In cases such as *Wisconsin v. Constantineau*, 400 U.S. 433 [] (1971), and *Goss v. Lopez*, 419 U.S. 565 [] (1975), we held that due process required the government to accord the plaintiff a hearing to prove or disprove a particular fact or set of facts. But in each of these cases, the fact in question was concededly relevant to the inquiry at hand. Here, however, the fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's

Megan's Law.  As the DPS Website explains, the law's requirements turn on an offender's conviction alone[.]

*Id.* at 7.

The Court thus concluded that "because due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," a plaintiff who asserts a right to a hearing under the Due Process Clause must show that the fact the plaintiff seeks to establish in that hearing is relevant under the statutory scheme.  *Id.* at 4, 8.

**2.**

Doe argues that her procedural due process claim is distinguishable from the claim rejected in *DPS* because Connecticut's classification is based solely on the fact of an offender's conviction, while Ohio's is based on present dangerousness, and that because "her classification defines her as presently dangerous," her present dangerousness is relevant under Ohio law and must be subject to reevaluation.  (Appellee's Br. at 8, 13.)  Indeed, the parties agree that Doe's procedural due process claim turns on whether Doe's present dangerousness, or present likelihood to reoffend, is "a fact that is . . . material to [Ohio's] statutory scheme."  *DPS*, 538 U.S. at 4.  We agree with Defendants that Doe's present dangerousness is not material under Ohio's sexual-offender registration and notification scheme, and, therefore, due process does not require that she be granted a hearing to challenge her classification.

Doe is correct that unlike the Ohio law applicable here, the Connecticut scheme did not provide an offender with a hearing at sentencing (or immediately after sentencing) to assess the offender's likelihood of reoffending; instead, the classification flowed from the conviction itself and was automatic.  But this distinction is of no consequence.  *DPS*'s holding is clear: "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme."  *Id.* at 8.  Doe is unable to make that showing.

Ohio defines "sexual predator" as "a person who has been convicted of, or has pleaded guilty to, committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."  O.R.C. § 2950.01(E) (2006).  Doe argues that this definition

"show[s] the central role of current risk in [Ohio's sexual-offender] classifications" because "[t]he statutory construction uses present-tense language for likelihood of reoffending, contrasted with past tense for 'convicted of or pleaded guilty.' Based on this definition, Doe's status as a sexual predator purports to reflect current dangerousness, not her level of dangerousness in 2006." (Appellee's Br. at 8.) We disagree.

The statute unambiguously provides that the sentencing judge's determination that a person convicted of a sexually oriented offense "is likely to engage in the future in one or more sexually oriented offenses" is "permanent and continues in effect until the offender's death." O.R.C § 2950.09(D)(2) (2003). In eliminating an offender's right to petition the sentencing court for a reclassification hearing and declaring the classification permanent, the Ohio legislature made clear that the initial "classification or adjudication" could never "be removed or terminated," *id.*, and that an offender's duties and restrictions stemming from that classification could not "be removed or terminated" either, *id.* § 2950.07(B)(1).[8]

Thus, Doe's current sexual-predator classification is based on her likelihood of reoffending as of the time of the classification hearing because under Ohio's scheme, that assessment operated to require that her name be placed in the sex-offender registry permanently. As in *DPS*, no fact other than that assessment is relevant to Doe's present classification. 538 U.S. at 7. In other words, Doe's duty to register and the attendant restrictions stem not from her current dangerousness, but from the assessment of her dangerousness at her classification hearing, which resulted in a permanent sexual-predator classification. Therefore, she has not been deprived of constitutionally guaranteed process because "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id.* at 4.

We note that the legislative history of Ohio's sexual-offender registration and notification laws, relied on by Doe, provides her no support. Doe argues that "[s]tatutory intent/history shows [the] relevance of present risk," because "[w]hen creating [the sex-offender] classifications, Ohio's legislature expressed its intention to build a risk-based system to ensure

---

[8]Notably, Ohio continues to allow juveniles to petition a court for a reevaluation of their recidivism risk and a change in their classification. O.R.C § 2152.85 (2008).

public safety." (Appellee's Br. at 8–9 (citing O.R.C. §§ 2950.02(A)(6) (1996)[9], 2950.02(B) (1996)[10].) To the extent that the legislative history suggests that "relevant information" means current information, and that a change in an offender's likelihood of reoffending was at one point considered relevant, that is consistent with our understanding of the statute; the provisions Doe cites for support were enacted at a time when Ohio allowed offenders to petition for a rehearing. At that time, Ohio apparently believed that risk reassessment was appropriate, and present dangerousness material. But the Ohio legislature changed the law in 2003 to provide that "the classification or adjudication of the offender as a sexual predator is permanent and continues in effect until the offender's death and in no case shall the classification or adjudication be removed or terminated." O.R.C. § 2950.09(D)(2). The legislature's intent could not be more clear: Doe's classification at the post-sentencing hearing is permanent and cannot be changed.

As in *DPS*, the state "has decided that the registry information of all sex offenders—*currently dangerous or not*—must be publicly disclosed," 538 U.S. at 7 (emphasis added), and "States are not barred by principles of '*procedural* due process' from drawing such classifications." *Id.* at 8 (citations omitted).

> Absent a claim (which respondent has not made here) that the liberty interest in question is so fundamental as to implicate so-called "substantive" due process, a properly enacted law can eliminate it. That is ultimately why . . . a convicted sex offender has no more right to additional "process" enabling him to establish that he is not dangerous than . . . a 15-year-old has a right to "process" enabling him to establish that he is a safe driver.

---

[9]Section 2950.02(A)(6) stated:

The release of information about sexual predators and habitual sex offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems as long as the information released is rationally related to the furtherance of those goals.

[10]Section 2950.02(B) stated:

[I]t is the general assembly's intent to protect the safety and general welfare of the people of this state. The general assembly further declares that it is the policy of this state to require the exchange in accordance with this chapter of relevant information about sexual predators and habitual sex offenders among public agencies and officials and to authorize the release in accordance with this chapter of necessary and relevant information about sexual predators and habitual sex offenders to members of the general public as a means of assuring public protection and that the exchange or release of that information is not punitive.

*Id.* at 8–9 (Scalia, J., concurring). Doe's extensive discussion of scientific scholarship declaring that "[t]he likelihood that a sex offender will reoffend declines with time, treatment, and other factors," suggests that reassessment of risk *should* be material under Ohio's statutory scheme, but it does not show that it *is* material. And Ohio's failure to consider changes to an offender's likelihood of reoffending does not implicate procedural due process concerns. *Id.* at 8 ("Such claims must ultimately be analyzed in terms of substantive, not procedural, due process." (citation omitted)).

In sum, because Doe's registration requirement stems from the determination of her likelihood of reoffending at the time of her classification hearing and is not dependent on her current dangerousness, she has no procedural due process right to a reclassification hearing. Further, the wisdom of Ohio's decision to make the determination of a sexual offender's future dangerousness permanent is not subject to a procedural due process challenge.

## IV. CONCLUSION

We **REVERSE** the judgment of the district court holding O.R.C. §§ 2950.09(D)(2) (2003) and 2950.07(B)(1) (2003) unconstitutional.