# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 18-11368

December 28, 2020

Lyle W. Cayce
Clerk

SHANNON DAVES; SHAKENA WALSTON; ERRIYAH BANKS; DESTINEE
TOVAR; PATROBA MICHIEKA; JAMES THOMPSON, on behalf of
themselves and all others similarly situated; FAITH IN TEXAS; TEXAS
ORGANIZING PROJECT EDUCATION FUND,

> Plaintiffs - Appellants Cross-Appellees

v.

DALLAS COUNTY, TEXAS; ERNEST WHITE, 194th; HECTOR GARZA,
195th; RAQUEL JONES, 203rd; TAMMY KEMP, 204th; JENNIFER
BENNETT, 265th; AMBER GIVENS-DAVIS, 282nd; LELA MAYS, 283rd;
STEPHANIE MITCHELL, 291st; BRANDON BIRMINGHAM, 292nd;
TRACY HOLMES, 363rd; TINA YOO CLINTON, Number 1; NANCY
KENNEDY, Number 2; GRACIE LEWIS, Number 3; DOMINIQUE
COLLINS, Number 4; CARTER THOMPSON, Number 5; JEANINE
HOWARD, Number 6; CHIKA ANYIAM, Number 7 Judges of Dallas County,
Criminal District Courts,

> Defendants - Appellees Cross-Appellants

MARIAN BROWN; TERRIE MCVEA; LISA BRONCHETTI; STEVEN
AUTRY; ANTHONY RANDALL; JANET LUSK; HAL TURLEY, Dallas
County Magistrates; DAN PATTERSON, Number 1; JULIA HAYES, Number
2; DOUG SKEMP, Number 3; NANCY MULDER, Number 4; LISA GREEN,
Number 5; ANGELA KING, Number 6; ELIZABETH CROWDER, Number 7;
CARMEN WHITE, Number 8; PEGGY HOFFMAN, Number 9; ROBERTO
CANAS, JR., Number 10; SHEQUITTA KELLY, Number 11 Judges of Dallas
County, Criminal Courts at Law,

> Defendants - Appellees

No. 18-11368

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-154

_____

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This is an interlocutory appeal from a preliminary injunction and related orders entered in a Section 1983 lawsuit. The claim is that state judges in Dallas, Texas, are unconstitutionally denying release to indigent arrestees who cannot pay the prescribed cash bail. The district court certified the suit as a class action and allowed three different categories of judges to be defendants. The district court determined that the Sheriff was not a proper defendant for Section 1983 purposes but did not yet dismiss her from the case. The district court held there was a likelihood of success by the Plaintiffs on their equal-protection and procedural-due-process claims and granted injunctive relief against the judges and the County.

With one exception, we agree with the district court that the Plaintiffs have standing. This suit was properly allowed to proceed against most of the judges and the County. As for the Criminal District Court Judges, though, we hold that they are not proper defendants because the Plaintiffs lack standing as to them and cannot overcome sovereign immunity. We also disagree with the district court and hold that the Sheriff can be enjoined to prevent that official's enforcement of measures violative of federal law. Finally, the district court was correct to conclude that Plaintiffs need not first pursue *habeas corpus* relief. We AFFIRM the injunction — with one revision that we will explain — and REMAND for further proceedings.

No. 18-11368

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of the briefing, Defendant Dallas County asserted that the Plaintiffs' counsel had brought more than a dozen cases in different states challenging the requirement of money bail for indigent arrestees. Among these were five active cases in Texas: this one in Dallas County, one in Galveston County, and three in Harris County. A Harris County case resulted in three Fifth Circuit opinions that are significant to this appeal. Those opinions will be identified later and discussed throughout our analysis.

The suit before us was filed on January 21, 2018, in the United States District Court for the Northern District of Texas. The statutory vehicle was 42 U.S.C. § 1983. An amended complaint was filed a little more than a week later. The Plaintiffs include six indigent individuals who were arrested from January 17 to January 19, 2018, and had allegedly been kept in jail in Dallas County because they could not afford to pay the required cash bail.

The appellate record shows that those arrested for criminal offenses in Dallas County are taken for an initial hearing before Dallas County Criminal District Court Magistrate Judges. At this hearing, a Magistrate Judge sets bail and considers whether to release the arrestee on a secured or unsecured bond. Seven Magistrate Judges are defendants; an affidavit states there are twenty in the county.

Additional defendants include Dallas County and its Sheriff, Marian Brown. Also sued are 17 Dallas County Criminal District Court Judges ("District Court Judges"), who handle felony offenses, and 11 judges of the Dallas County Criminal Courts at Law ("County Court Judges"), with jurisdiction over misdemeanor offenses. The District Court Judges appoint all the Magistrate Judges. TEX. GOV'T CODE § 54.301(a) (providing that every

3

district court judge in Dallas County "may appoint a magistrate to perform the duties authorized by this subchapter").

Both District Court and County Court Judges established a schedule for Magistrate Judges to use in deciding the amount of bail needed to release arrestees. The schedules were contained in broader guidelines for these proceedings. The schedules suggest specific bail amounts for corresponding offenses. For example, the misdemeanor guidelines' schedule recommends Magistrate Judges set bail at $500 for all individuals arrested for Class B misdemeanor offenses, unless other "special circumstances" apply or "if the arrestee is on felony probation." Both guidelines state they are only recommendations. Further, in February 2018, the month after this suit was filed, the District Court Judges directed the Magistrate Judges to take an arrestee's ability to pay into consideration when setting bail, based on financial affidavits arrestees can fill out prior to the hearing. Nevertheless, the district court here found that the Magistrate Judges "routinely treat these schedules as binding when determining bail."

The district court issued an opinion and injunction on September 20, 2018. The court found that the directive to Magistrate Judges to take financial affidavits into account made no noticeable difference in the practices for setting terms of release. Indigent arrestees who could not pay the bail amount suggested in the schedule and who did not plead guilty were "taken back to the Dallas County Jail" and "kept in a jail cell until [their] next appearance," usually "weeks or months" later.

The district court stated that its rulings were "greatly simplified by" the Fifth Circuit precedents involving Harris County. The district court acknowledged only two differences between the Dallas County case and the opinions on the Harris County bail practices. The first was that both felony and misdemeanor arrestees were involved in the Dallas County case, while

4

only those arrested for misdemeanors had been plaintiffs in the Harris County litigation.  Second, only the Dallas County Plaintiffs raised a substantive-due-process claim, while the plaintiffs in both cases claimed violations of procedural due process and equal protection.  The court held that the two differences were immaterial.

The district court found "a clear showing of routine wealth based detention."  It also found "a clear showing this detention violates procedural due process and equal protection rights."  The district court concluded that our decision as to Harris County had already indicated the appropriate injunctive relief for such violations, and accordingly the court imposed in the present case the model injunction suggested in one of those earlier opinions.

There is more to the injunction, of course, but we highlight its key feature: "Dallas County is enjoined from imposing prescheduled bail amounts as a condition of release on arrestees who attest that they cannot afford such amounts without providing an adequate process for ensuring there is individual consideration for each arrestee of whether another amount or condition provides sufficient sureties."  Thus, the relief is procedural.  In sum, within 48 hours of arrest, a hearing must be held to evaluate whether any bail amount is needed for the indigent or whether some other condition will suffice.  After we address some preliminary issues raised on appeal, which will take us some time, the principal remaining issue will be whether a procedural remedy is enough.  The Plaintiffs say "no."  According to them, cash bail is permissible only if an individualized finding is made that cash bail is necessary despite the indigent's inability to pay.  Adding that requirement to the injunction is the critical addition the Plaintiffs demand.  We will explain our rejection of it.

No. 18-11368

DISCUSSION

The district court's judgment has generated an appeal, three cross-appeals, and a jurisdictional issue raised late in a letter to the court. Combining where we can, we will discuss the issues in the following order, which appears to be a logical sequencing:

I.      Do the Plaintiffs have standing generally?

II.     Should the court either abstain or first require the Plaintiffs to exhaust state-court remedies?

III.    Are the District Court Judges proper defendants?

IV.     Is Dallas County a proper defendant?

V.      Is the Sheriff a proper defendant?

VI.     What relief, if any, should be granted to the Plaintiffs?

We review "a district court's decision to grant a preliminary injunction for abuse of discretion" but review "its findings of fact for clear error and its conclusions of law *de novo*." *Doe I v. Landry*, 909 F.3d 99, 106 (5th Cir. 2018). We review mixed questions of law and fact *de novo*, even in the preliminary-injunction context. *See Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

We emphasize that we are not writing on a blank slate concerning bail procedures. This court has already issued precedential, *i.e.*, binding, decisions on similar issues arising from a suit involving pretrial detainees in Harris County, Texas. There are some distinctions to be made between that case and the current one, which may make a difference. We will give a brief overview and will often return to these prior opinions.

The Harris County litigation led to our first major review of the constitutional requirements for setting bail since *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (*en banc*). Our initial decisions were to reverse the district court's preliminary injunction because in practice it would require the release of all indigent misdemeanor arrestees who claimed an inability to pay money

No. 18-11368

bail, resulting in the "outright elimination of secured money bail for indigent misdemeanor arrestees." *ODonnell v. Harris Cnty.*, 882 F.3d 528, 546 (5th Cir. 2018), *withdrawn and replaced by ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) ("*ODonnell I*"). This court held that while it violated Equal Protection Clause and Due Process Clause principles to make "mechanical" use of a secured-money-bail schedule for indigent arrestees, the exclusive remedy was a robust bail hearing, not release. *ODonnell I*, 892 F.3d at 163.

On remand, the district court revised the injunction, leading to a new appeal. In a published opinion issued prior to any ruling on the merits of the appeal, a Fifth Circuit motions panel granted a stay of four provisions of the district court's amended preliminary injunction. *ODonnell v. Goodhart*, 900 F.3d 220, 225–26, 228 (5th Cir. 2018) ("*ODonnell II*"). In this court's view, the district court again required the automatic release of indigent misdemeanor arrestees who could not afford the secured-money-bail-schedule amount. *Id.* We confirmed that a thorough hearing cured any Fourteenth Amendment deficiencies and that no substantive-due-process rights applied. *Id.* at 227–28. Finally, when newly elected judges in Harris County moved to vacate the opinion on the stay, we denied the motion and stated that "the published opinion granting the stay is this court's last statement on the matter." *ODonnell v. Salgado*, 913 F.3d 479, 482 (5th Cir. 2019) ("*ODonnell III*").

No. 18-11368

## I.    *The Plaintiffs' standing to bring suit over bail policies*

The Texas Attorney General, as counsel for the District Court Judges, filed two letters ostensibly under the authority of Federal Rule of Appellate Procedure 28(j).  The first letter was filed 11 days before oral argument; the second, 10 days after.  Those letters raised for the first time an argument based on long-existing law about why the named Plaintiffs have lacked standing from the very outset of this case to bring their claims against anyone.

We start with the fact that these were not proper Rule 28(j) letters but were functionally supplemental letter-briefs filed without authorization.  The use of Rule 28(j) to bring newly discovered but older authorities or even newly recognized issues to the court's attention is not unique to this case.  *See, e.g.*, *United States v. Sanchez-Villalobos*, 412 F.3d 572, 577 (5th Cir. 2005).  Indeed, we acknowledge Rule 28(j) may seem more broadly written than our corresponding local rule.  Nonetheless, we remind that a Rule 28(j) letter sent without an accompanying motion for leave should be used only to bring "intervening decisions or new developments . . . to the court's attention," *i.e.*, authority or events intervening since the earlier briefing and relevant to issues already before the court.  5TH CIR. R. 28.4.  Further, the comments in the letter should be succinct, *i.e.*, not a brief on the new opinion.  *Id.*  On the other hand, a motion for leave of court should be filed prior to submitting a supplemental brief raising caselaw or an issue that existed at the time of the prior briefing. *See id.*  Although each letter in this appeal cited a new opinion, the decisions each repeated principles of law that existed well before the new articulations but had not earlier been identified in the briefing.  Thus, the letters were used to raise a new issue, not to inform the court of new authority.

Nonetheless, Article III standing is a jurisdictional requirement. Consequently, its absence may be raised by a party even late in litigation.

No. 18-11368

*Davis v. Tarrant Cnty.*, 565 F.3d 214, 220 (5th Cir. 2009). In any event, the court itself needs to be alert to the possible absence of jurisdiction.

"[T]he jurisdictional issue of standing is a legal question for which review is *de novo*," and "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *Crane v. Johnson*, 783 F.3d 244, 250–51 (5th Cir. 2015). To explain the requirements for standing, we turn to an opinion that was cited in one of the letters:

> To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief. Courts have divided this rule into three components: injury in fact, causation, and redressability. The party seeking to invoke federal jurisdiction, in this case the Plaintiffs, bears the burden of establishing all three elements.
>
> Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive and declaratory relief "cannot conceivably remedy any past wrong," plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact. To be an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) "concrete and particularized," not abstract; and (3) "actual or imminent, not 'conjectural' or 'hypothetical.'"

*Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (footnotes omitted).

In *Stringer*, this court reversed a district court's order granting injunctive relief to the plaintiffs because they did not have standing. *Id.* at 719. The plaintiffs alleged that the Texas voter-registration system deprived them of their right to simultaneous voter-registration applications at the time they attempted to change their driver's licenses online after moving to a new

9

Texas county. *Id.* at 719–21. The plaintiffs claimed the online system led them to believe they were registered to vote in the Texas county to which they moved; on election day in 2014, they unsuccessfully attempted to vote. *Id.* at 719. By the end of 2015, however, all the plaintiffs were registered to vote in their respective counties. *Id.* This court found that the injury identified by the district court "was not a continuing or threatened future injury, but a past injury." *Id.* at 721.

The *Stringer* plaintiffs argued on appeal that they had standing based on the capable-of-repetition-yet-evading-review doctrine. *Id.* at 724. That doctrine provides an exception to mootness but not to standing. Thus, we end our explanation of *Stringer* other than to note that none of that was new law.

Nor was there anything new in the other decision highlighted in the letters, *Frank v. Gaos*, 139 S. Ct. 1041 (2019). That opinion held there cannot be a class action unless a named plaintiff has standing. *Id.* at 1046. Using *Frank* as its new authority, though, the Texas Attorney General then cited older authority that seems likely to have been the actual reason for the letter, namely, *O'Shea v. Littleton*, 414 U.S. 488 (1974). The plaintiffs in *O'Shea* sought injunctive relief against state judicial officers who allegedly had intentionally discriminated in setting bond and sentencing. *Id.* at 495. Though some of the plaintiffs alleged they had been injured by this discrimination in the past, none alleged they were currently detained. *Id.* The Court held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 495–96.

Applying those principles to the present appeal, the Texas Attorney General argues that the named Plaintiffs "lack standing to seek equitable relief reforming Dallas County's bail procedures" because the "alleged injuries occurred in the past, and they have no certainly impending future injury to

support a claim for prospective relief." As we understand the argument, it is that even when the complaint was filed, none of the named Plaintiffs had standing. We start, then, by examining the original complaint, filed on January 21, 2018. The complaint claimed that the first named Plaintiff was arrested on January 17 and was in jail when the complaint was filed on January 21. The other named Plaintiffs were said to have been arrested "this week" and were "all being kept in jail cells at the Dallas County Jail because they cannot afford to pay the money bail amount required for release."

The amended complaint of January 30, 2018, stated that "[a]t the time this lawsuit was filed on January 21, 2018, all six Named Plaintiffs were being kept in the Dallas County Jail because they could not afford to pay secured financial conditions of release." At different points between the filing of the suit and the filing of the amended complaint on January 30, 2018, all named Plaintiffs had been released. According to the amended allegations, three of the named Plaintiffs were released after the original complaint was filed because others provided cash bail for them. Another was released after charges were dismissed. Two others had reductions in the amount of money bail needed for release, and ultimately the needed payments were made.

So, do the Plaintiffs in the present case have standing? The issue "is to be assessed under the facts existing when the complaint is filed." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992). The Texas Attorney General asked if each of the Plaintiffs had "already gone through" the bail procedures they challenge. Each of the Plaintiffs had an initial encounter with those procedures but remained affected by the procedures because the procedures caused each Plaintiff to remain detained. When the initial complaint was filed, the Plaintiffs had not finished navigating the County's bail system. We do not understand the argument to be that the relevant complaint for standing is the

amended one, at which time the Plaintiffs assert they had emerged from the bail system into their conditional liberty.

The argument in these letter briefs ends the inquiry into injury far too soon. Though the Plaintiffs were subjected to the claimed unconstitutional bail requirement before they filed the original complaint, they were still in detention at the time the complaint was filed and were being subjected to "continuing, present adverse effects." *O'Shea*, 414 U.S. at 496. Indeed, the injunctive relief they seek, and if the Plaintiffs had remained in pretrial detention through today when we rule, would require an additional bond hearing to determine that "pretrial detention is necessary to meet a compelling government interest." Accordingly, with one exception regarding that District Court Judges that we will soon identify, the Plaintiffs' complaint at the time of filing satisfied the redressability and injury-in-fact requirements.

We add to the discussion that on September 20, 2018, the district court granted the Plaintiffs' motion for class certification and appointed them as class representatives. The possible mootness of the named Plaintiffs' claims at the time the amended complaint was filed or before the class was certified is of no consequence to this court's jurisdiction over this class action. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991). Because the Plaintiffs had standing when they filed their original complaint, the capable-of-repetition-yet-evading-review doctrine precludes mootness. *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Caliste v. Cantrell*, 937 F.3d 525, 527 n.3 (5th Cir. 2019).

## II.    *First bringing a state* habeas corpus *suit*

The District Court Judges, in their cross-appeal, say the district court should have dismissed the Plaintiffs' suit because it was necessary for the Plaintiffs to pursue the state *habeas corpus* remedy prior to bringing this suit. Those judges rely first on *Preiser v. Rodriguez*, 411 U.S. 475 (1973). *Preiser*

held that challenges to detention cannot be brought through a Section 1983 action where the relief sought would necessarily lead to "either immediate release from that confinement or the shortening of its duration." *Id.* at 489. Instead, detainees must proceed through a *habeas* action, first in state court. *Id.* at 500. Thus, these judges argue that because the Plaintiffs' "suit effectively seeks the pretrial release of indigent arrestees," they were required to travel by way of *habeas*, not Section 1983. Some version of most of the issues brought to us in this appeal were mentioned in our *ODonnell* opinions reviewing Harris County bail practices. The *Preiser* issue, though, was not properly presented in that appeal. *See ODonnell I*, 892 F.3d at 157 n.3.

The question in deciding whether to apply this *habeas*-first rule under *Preiser* is whether success in litigation such as the Section 1983 suit brought here "would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). The Court in *Dotson* rejected the Government's *Preiser* argument and allowed a Section 1983 suit to proceed because the challenge to parole-eligibility decisions would not mean immediate release but at most a new eligibility review. *Id.* at 82.

Of relevance as well is *Gerstein*, 420 U.S. 103. There, pretrial detainees brought a Section 1983 action requesting declaratory and injunctive relief that they receive a probable-cause-determination hearing. *Id.* at 107 n.6. The Court held that *Preiser* did not bar their Section 1983 action because they did not clearly ask for release from state custody. *Id.*

The Plaintiffs here assert that they are not first required to bring a *habeas* claim because they are seeking new procedures and protections for the decisions judges make on whether and on what terms to allow release of arrestees. Their argument seems sound, but the District Court Judges insist that the complaint filed in this case actually seeks release for those whose indigency makes them unable to provide the amount of bail that is required.

No. 18-11368

Among the claims in the complaint is that the Plaintiffs, after their initial arrest, remain "in jail solely because they cannot afford to make a monetary payment." The District Court Judges' argument is that because what the Plaintiffs want fixed is the only thing keeping them in jail, *Preiser* requires *habeas* first. To distinguish *Dotson*, these judges argue that the Plaintiffs seek far more than just "a new parole hearing at which [state] parole authorities may, in their discretion, decline to shorten" the prison term, *Dotson*, 544 U.S. at 82; they are after an elimination of cash bail.

Though the district court's order here did not eliminate cash bail, the District Court Judges argue that the Plaintiffs sought that relief in their complaint, activating the requirement that the claim first be made in a state *habeas* filing. These judges quote a Supreme Court opinion which held that, because a release from state custody "was neither asked [for by those plaintiffs] nor ordered" by the district court, *Preiser* was inapplicable. *Gerstein*, 420 U.S. at 107 n.6. From that, these Defendants argue that what is asked for in the complaint controls.

We distill these assertions as follows. This suit from its inception has challenged the alleged lack of individualized analysis of each detainee's relevant circumstances and any resulting necessity for cash bail. The absence of those individualized determinations means cash bail often was required though unnecessary. The requested remedies did not include the absolute abolition of cash bail. Instead, the Plaintiffs sought a declaratory judgment and injunctive relief based on the claim that "wealth-based detention that keeps them in jail because they cannot afford to pay a secured financial condition of release" is unconstitutional until it includes "an inquiry into or findings concerning ability to pay," a "consideration of nonfinancial alternatives," and the making of "findings that a particular release condition

14

— or pretrial detention — is necessary to meet a compelling government interest."

We conclude that the declaratory judgment and the injunction that were granted do not present a *Preiser* issue. The relief of a more robust hearing would not necessarily lead to "immediate release from that confinement or the shortening of its duration." *Preiser*, 411 U.S. at 489. Requiring that a judicial officer consider whether the detainee can afford money bail and, if not, whether there is some option for release short of money bail that would protect the County's legitimate interests does not short circuit state *habeas* procedures.

## III.    *The District Court Judges as defendants*

We start our review of the District Court Judges' appeal with an argument made primarily by the County Court Judges, and directly addressed by the District Court Judges only in a footnote in their reply brief. The argument is that because the claimed policies at issue involve pretrial bail decisions, they are judicial in nature. *See Davis*, 565 F.3d at 226. When judges are acting in their judicial capacity, the county in which they serve "may not be held liable for those acts." *Id.* at 227. Binding circuit precedent settles this issue. In our recent opinion resolving similar issues regarding judges in Harris County, we held that each of those judges was not "acting in his or her judicial capacity to enforce state law" when preparing and implementing the bail schedules. *ODonnell I*, 892 F.3d at 155 (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). We see no meaningful distinction on this point between the actions of the judges in Harris County and those before us.

Next is another issue about standing. We have already resolved one challenge to the Plaintiffs' standing, namely that each Plaintiff no longer had a claim against anyone regarding pretrial release by the time the suit was filed.

No. 18-11368

That is not the only issue of standing, though.[1]  Another is whether the Plaintiffs properly can seek to enjoin the District Court Judges in their official capacity if the Plaintiffs' claims against them fail to meet the causal-connection and redressability elements for the existence of a case or controversy, citing such caselaw as *Lujan v. Defenders of Wildlife*, 504 U.S. at 560–61.  The District Court Judges assert that they are incapable of redressing the Plaintiffs' injury for a number of reasons, including that the District Court Judges have no power to direct Magistrate Judges to set bail at any amount for indigent defendants nor to intervene in ongoing proceedings before Magistrate Judges.  The District Court Judges also say they cannot "acquiesce" in Magistrate Judges' bail decisions because the District Court Judges lack jurisdiction under Texas law.  Further, Magistrate Judges retain exclusive jurisdiction until the arrestees are formally charged.  *See Ex parte Clear*, 573 S.W.2d 224, 229 (Tex. Crim. App. 1978) (*en banc*); *see also* TEX. CONST. art. V, § 12; TEX. CODE CRIM. PRO. arts. 2.09, 17.03(a), 17.15.

Another argument with related analysis is that the suit against the District Court Judges cannot proceed because, as state officials, sovereign immunity bars suit against them.  The District Court Judges, of course, must be state officers for the State's immunity to apply.  The district court in this case concluded they were county officers for the purposes of Section 1983 and municipal liability.  The court relied on *ODonnell I*.  District Court Judges were not parties there, but the court held that County Court Judges were county officers.  *ODonnell I*, 892 F.3d at 155–56.  We will discuss the County Court Judges later.  We now analyze the issue as to the District Court Judges.

---

[1] The District Court Judges argued in their opening brief on appeal that the Plaintiffs lacked standing to enjoin them in their individual capacity.  The Plaintiffs conceded this point.

No. 18-11368

Different analyses apply under Section 1983 and under state sovereign immunity when determining whether an official acts for the State or for the County. For Section 1983, whether a government official is acting for a state or a county is a question of state law as it pertains to the precise function at issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997). For state sovereign immunity, though, when determining whether a suit against a governmental agency or official is actually a suit against the State, we apply these factors:

> 1. Whether the state statutes and case law view the agency as an arm of the state;
>
> 2. The source of the entity's funding;
>
> 3. The entity's degree of local autonomy;
>
> 4. Whether the entity is concerned primarily with local as opposed to statewide problems;
>
> 5. Whether the entity has the authority to sue and be sued in its own name; and
>
> 6. Whether the entity has the right to hold and use property.

*Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999). We need not go through the factors here, as the court has already held that Texas criminal "district judges . . . are undeniably elected state officials" for purposes of state sovereign immunity. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744 (5th Cir. 1986) (citing *Holloway v. Walker*, 765 F.2d 517 (5th Cir. 1985)).

Other relevant authority establishes that, at least for purposes of appointing counsel for indigent criminal defendants, the judges of the state district courts in Texas act for the State. *See Clanton v. Harris Cnty.*, 893 F.2d 757, 758 (5th Cir. 1990). As to issuing bail schedules, we see nothing to suggest, even though these District Court Judges serve only within the geographical boundaries of Dallas County, that deciding on bail should be seen as a county function. For example, nothing in the briefing supports that Texas

17

No. 18-11368

has given counties, and specifically Dallas County, authority over district courts located in their counties. We distinguish another circuit's case in which it was shown that Georgia by statute expressly delegated to cities the authority to set bail policy. *Walker v. City of Calhoun*, 901 F.3d 1245, 1255–56 (11th Cir. 2018). Thus, in that case, a city was a proper defendant. *Id.* No comparable delegation has been shown here.

It is true that district courts come in different shapes and sizes across Texas. For our understanding of the structure, we rely on information found on the official Texas Judicial Branch website, which states:

> The district courts are the trial courts of general jurisdiction of Texas. The geographical area served by each court is established by the Legislature, but each county must be served by at least one district court. In sparsely populated areas of the State, several counties may be served by a single district court, while an urban county may be served by many district courts.[2]

A document on that website states that the District Courts in 46 counties serve only one county, but in those counties are multiple separately numbered District Courts with separate judges; the remaining 208 counties are grouped into 57 District Court districts.[3] If there is any error in our understanding of the numbers, the basic point is unassailable that a large number of Texas District Courts serve multiple counties. We do not think it is rational to consider the single-county District Courts when making policy are acting for their single counties, but if multi-county District Courts established the same bail schedule, they would, anomalously, be policymakers for the State. If it is instead argued that these multi-county judges act as policymakers for their multiple counties, that is an unusual concept in municipal-liability law. Such

---

[2] *About Texas Courts*, at https://www.txcourts.gov/about-texas-courts/trial-courts/.

[3] *Complexities in the Geographical Jurisdictions of District Courts*, at https://www.txcourts.gov/media/1444864/jurisdictional-overlap-district-courts-oct-2019.pdf; *see also District Judges*, at https://www.txcourts.gov/media/1443296/district_judges-1.pdf.

No. 18-11368

multi-county trial courts seem akin for this analysis to the multi-county state courts of appeals, which surely are not policymakers for their many counties but instead are within the state court system no matter in what capacity the judges act. The fact that the Dallas County District Courts serve within only one county is of no consequence. What matters is that these courts serve as the foundation, hence a component, of the statewide court system.

Making a similar point, the United States Supreme Court held that bail hearings in Texas start the adversary judicial proceeding. *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 213 (2008). That adds to the evidence that the decisions here in question were made by officers of the state judicial system.

We conclude that state District Court Judges act for the State when acting on bail. The district court in this case, at least for purposes of Section 1983 and not sovereign immunity, held that these judges were county officers. The district court relied on our *ODonnell* rulings about those county court judges and found no need to engage in independent reasoning even about this additional category of judges. With respect, the District Courts are not county courts, and their judges are not county officers when acting regarding bail. We also conclude that because the District Court Judges are state officers, so are the Magistrate Judges that the District Court Judges appoint and to whom they provide guidance such as with the bail schedule.[4]

---

[4] *ODonnell I* dealt with a different category of ancillary judicial officers, namely "Hearing Officers." 892 F.3d at 152. Those hearing officers filled positions statutorily created specifically for Harris County; they were appointed by a nine-member board with the consent of the Harris County Commissioners Court. TEX. GOV'T CODE § 54.852. The Magistrate Judges who concern us are provided for in a statute applicable only to Dallas County, which states every district court judge there "may appoint a magistrate to perform the duties authorized by this subchapter." *Id.* § 54.301(a). Consistent with our reading of that subchapter of the Code, the County here states the Magistrate Judges report only to the District Court Judges.

Though the Dallas Commissioners Court must approve the appointment of Magistrates, we conclude that the close relation between the Magistrates and the District Judges who refer proceedings to them prevents them from being county officers.

No. 18-11368

Notwithstanding these conclusions, victory or defeat for the District Court Judges on the issue of their amenability to suit cannot yet be declared. Because this part of the suit is against state judges in their official capacity, it is in effect a suit against the State of Texas itself.  A high hurdle now looms for the Plaintiffs.  Generally, "Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).  That immunity "also prohibits suits against state officials or agencies that are effectively suits against a state." *Id.* One possibly relevant exception here (there also is an irrelevant one) is for "suits for prospective . . . relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).  The origin of this exception is *Ex parte Young*, 209 U.S. 123 (1908).

Under *Ex parte Young*, a case can proceed against individual state officials named in their official capacities when the claim is for an ongoing violation of federal law, but the relief sought must be prospective. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).  Only a plaintiff's allegations are to be considered, not what was later proven or the relief that was granted: we are to conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).  Also, the prospective relief must be equitable only, such as a declaratory judgment or an injunction. *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

The District Court Judges argue that no prospective relief here is needed or available against them because the bail schedule those judges earlier put in place is not the problem.  Rather, the source of the claimed harm is the failure

of Magistrate Judges to utilize the discretion the District Court Judges gave them. These Defendants take the point further by saying the Plaintiffs are seeking to have them "affirmatively police the Magistrate Judges in an attempt to protect arrestees from alleged constitutional violations by those county-level" actors. This, they argue, is not a claim of an ongoing violation on their part.

Before proceeding further, we inject a related argument made by the District Court Judges. They argue the Plaintiffs have no standing due to the absence of a case or controversy, and that is shown by the absence of causation and redressability. The basic point is that all the District Court Judges did was establish a discretionary schedule for setting bail. Once that was in place, the individual decisions by the actual bail-setters, who are the Magistrate Judges, create the claimed injury. The District Court Judges, in turn, cannot control those individual decisions. Among the authorities the District Court Judges say supports their argument is one in which this court stated that because the "defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court." *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (*en banc*).

The argument that there is no case or controversy intersects with the Eleventh Amendment issue. "Case or controversy" presents questions of traceability and redressability. The Eleventh Amendment issue concerns similar concepts because it is founded on whether what the District Court Judges *are doing now* is the cause of any injury to the Plaintiffs, and whether prospective relief would play a part in ameliorating the claimed injury. The fact that the claimed genesis of the current injury was a prior District Court Judge's order does not control on the retrospective versus prospective analysis. Indeed, in a case dealing with events that occurred in the Nineteenth Century,

we recently held that so "long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under . . . *Young*." *Williams*, 954 F.3d at 738.

An earlier opinion agreed with our sense that the analysis for the *Ex parte Young* exception and for standing have "significant overlap." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017). Consequently, the following discussion of standing and of the Eleventh Amendment will at times overlap.

We look to the complaint for the relevant allegations. The Plaintiffs assert that the bail schedules "promulgated" by the District Court Judges "require Magistrates to impose secured money bail in every case," and based on "policy and practice, the Magistrates interpret the . . . bail schedule to require secured money bail in every case." The bail schedule was an exhibit to the complaint, so limiting the complaint's allegations is this language in the schedule: "These are recommended amounts. Bonds may be set higher or lower than the amounts shown if justified by the facts of the case and the circumstances of the defendant."

The complaint sought to show that the District Court Judges are responsible for the current problems by alleging that each judge is aware (1) "that secured money bail amounts are imposed in every case without an inquiry or findings concerning ability to pay and without consideration of or findings concerning alternatives," (2) "of the Magistrates' systemic failure to consider ability to pay," and (3) "of the Magistrates' systemic failure to consider non-financial alternative conditions, or to make findings concerning ability to pay or the necessity of any particular condition of release to meet a specific government interest." The concept for both causation and redressability inherent in these claims, though in different ways, is that of acquiescence. The complaint also explicitly made that claim.

No. 18-11368

In support of their divergent positions, each party quotes a Supreme Court opinion explaining that the injunction may be granted if it would remove an "absolute barrier" to vindicating the rights at issue. *Village of Arlington Heights v. Metro. Hous. Dev't Corp.*, 429 U.S. 252, 261 (1977). That reference, though, followed the Court's explanation that a plaintiff must have been "injured by the challenged action of the defendant," though the "injury may be indirect" so long as it is "fairly traceable to the defendant's acts or omissions." *Id.* In *Arlington Heights*, there was "little doubt" that those requirements were met because the defendant's actions were an "absolute barrier" to the plaintiff's exercise of its rights. *Id.* Limited, *i.e.*, not absolute, barriers may also suffice if injury resulting from the challenged action is shown.

Here, the Plaintiffs are not seeking an injunction to prevent the enforcement of the bail schedule itself but only to stop the allegedly rigid application of it. A principal assertion by the District Court Judges is that a Magistrate Judge has exclusive jurisdiction over the arrestee at the time that the decision on bail is being made. *See Guerra v. Garza*, 987 S.W.2d 593, 593–94 (Tex. Crim. App. 1999). The District Court Judges argue there is nothing they can do about the failure of a Magistrate Judge to apply discretion as to any particular arrestee. The Plaintiffs view the District Court Judges as complicit in the operation of cash-bail detention because, according to the complaint, they know of its allegedly unconstitutional operation but "have left the bail schedules in place, and have taken no formal action to correct the widespread practices that result in wealth-based detention."

In determining whether these allegations allow suit, we consider that the request for injunctive relief must be brought against a state official acting in violation of federal law who has a "sufficient 'connection' to enforcing an allegedly unconstitutional law." *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020). We have not resolved exactly what constitutes a sufficient connection to the

enforcement of the challenged law. *City of Austin*, 943 F.3d at 999. An *en banc* plurality of our court explained that "the officers [must] have 'some connection with the enforcement of the act' in question or be 'specially charged with the duty to enforce the statute' and be threatening to exercise that duty." *Okpalobi*, 244 F.3d at 414–15 (plurality op.). What remained unsettled after *Okpalobi* is whether *Ex parte Young* requires only "some connection" or a "special relationship" to the challenged law. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).

More recent cases have consistently required the plaintiff to show that the defendant has "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi*, 244 F.3d at 416). Meanwhile, a "general duty to see that the laws of the state are implemented" is not enough. *Id.* (quoting *Okpalobi*, 244 F.3d at 416). "If the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and 'our *Young* analysis ends.'" *In re Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). Further, enforcement "typically involves compulsion or constraint." *K.P.*, 627 F.3d at 124. In sum, our precedents show, on one end of the spectrum, that a concrete statutory duty to enforce the challenged law will invoke the *Ex parte Young* exception to sovereign immunity. On the other end, the *Ex parte Young* exception will not apply to a defendant who has neither "some connection" nor a "special relationship" to the enforcement of the challenged law.

We conclude that the District Court Judges lack a sufficient connection to the enforcement of the felony bail schedules. The District Court Judges promulgated the bail schedule used to set bail for felony arrestees. That alone is not enough to satisfy *Ex parte Young*'s requirements.

We have held that a governor's promulgation of an executive order was not sufficient for *Ex parte Young* because the authority "to issue, amend, or rescind an Executive Order 'is not the power to enforce it.'" *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020). Similarly, the District Court Judges' promulgation of the bail schedule does not equate to enforcement of it. Instead, enforcement of the bail schedules falls on the Magistrate Judges. Under Texas law, "[t]he amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail." TEX. CODE CRIM. PRO. art. 17.15. In Dallas County, after an arrest is made, the arrestee appears before a Magistrate Judge for arraignment. Conditions of release, such as bail, are set during arraignment. The statutory duty to "regulate," *i.e.*, enforce, bail therefore falls on Magistrate Judges because they are the officials "taking the bail." *See id.* The Magistrate Judges have a sufficient connection to invoke the *Ex parte Young* exception to sovereign immunity because they have a concrete statutory duty to enforce the challenged law. As for the District Court Judges, though, nothing in the record suggests that District Court Judges ever preside over arraignment or otherwise set bail or enforce the bail schedules.

As a result, the Plaintiffs have neither standing to sue the District Court Judges nor the ability to show a sufficient connection between the District Court Judges and enforcement of the felony bail schedule sufficient to satisfy *Ex parte Young*. Our principles of standing and the Eleventh Amendment therefore bar suit against the District Court Judges.

## IV.  *Dallas County as a defendant*

The County argues that these pretrial bail decisions are judicial in nature and cannot create liability for the County. We have already rejected that issue in our discussion of whether the District Court Judges are proper defendants. What we still need to decide is whether the Dallas County Court

No. 18-11368

Judges were State or County actors in doing so. Our *ODonnell I* opinion held that Harris County Criminal Court Judges acted for the county, but there are some differences in the statutory authority for the two counties. We need to look into that authority and not automatically apply our *ODonnell I* ruling.

Generally, county liability requires that "(1) an official policy (2) promulgated by the [county] policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). The United States District Court in this case simply adopted the holding in the earlier Harris County case that County Court Judges are county policymakers when implementing a bail schedule. *ODonnell I*, 892 F.3d at 155–56.

We look to *ODonnell I* to decide if there are distinctions that could make a difference as to the Dallas County Court Judges. Our analysis was this:

> Though a judge is not liable when "acting in his or her judicial capacity to enforce state law," *Moore*, 958 F.2d at 94, we agree with the district court that the County Judges are policymakers for the municipality. Texas law explicitly establishes that the Judges are "county officers," TEX. CONST. art. V § 24, imbued with broad authority to promulgate rules that will dictate post-arrest policies consistent with the provisions of state law, TEX. GOV'T CODE § 75.403(f).

*Id.* at 155. Thus, a provision of the state constitution and a statute are the authority. We examine each authority.

The cited part of the Texas constitution says this:

> County Judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury.

TEX. CONST. art. V, § 24. The Plaintiffs do not dispute the Defendants' explanation that the "County Judges" referenced at the beginning refers to the

single chief administrative officer for each county and not the multiple county judges at issue here. Just a few sections earlier in the constitution, the County Judge position is created: "There shall be . . . elected in each county, by the qualified voters, a County Judge, who shall be well informed in the law of the State." *Id.* art. V, § 15. That is not one of the judges involved here.

Though the "County Judge" who serves as the chief executive for the county is the only judge mentioned in Article V, Section 24, that section also refers to "other county officers." There is Texas caselaw that starts by observing that in "a general sense, and perhaps for special purposes, all the courts named [in various statutes] are state courts, and their presiding judges state officers." *State ex rel. Peden v. Valentine*, 198 S.W. 1006, 1008 (Tex. App. 1917—Fort Worth 1917, writ ref'd). Even so, that same court held "that the judge of the county court of Tarrant county for civil cases is a county judge, a county officer as contradistinguished from a district judge or a state officer." *Id.* In a later decision, the state supreme court held that the judges of a court created by the legislature for a single county "are county officers, and, therefore, can be removed only in the manner prescribed by [Section 24] of the Constitution." *Jordan v. Crudgington*, 231 S.W.2d 641, 646 (Tex. 1950).

We conclude from all this that the Dallas County Court Judges involved in this litigation are county officers — at least for some purposes. As the Supreme Court stated, though, the issue is not whether the official acts for the State or the County "in some categorical, 'all or nothing' manner," but instead for whom that official was acting on the particular issue in question. *McMillian*, 520 U.S. at 785. Thus, we do not find the cited section of the constitution dispositive. What in "particular" these judges did was to promulgate their own bail schedule. We find it necessary to go further than the broad language of the Texas constitution.

27

No. 18-11368

The other authority used in *ODonnell I* for concluding that the Harris County judges were acting for the county in a policymaking role was Texas Government Code § 75.403(f). *ODonnell I*, 892 F.3d at 155. That provision allows adoption of "rules consistent with the Code of Criminal Procedure, 1965, and the Texas Rules of Civil Procedure for practice and procedure in the courts." TEX. GOV'T CODE § 75.403(f). Section 75.403 is titled "Presiding Judge for Certain Harris County Courts," and by its own terms applies only in Harris County. We could find no comparable statute for Dallas County or for the county courts in Texas generally.

The only general rule-making authority we discovered permits "district and statutory county court judges in each county [to], by majority vote, adopt local rules of administration." TEX. GOV'T CODE § 74.093(a). The authority seems limited to administrative matters such as assignment of cases, designation of court divisions, frequency of holding court, division of caseloads, and time away from court for judicial education, vacation, and similar reasons. *Id.* § 74.093(b)(1)–(5). Additional subsections set out additional subjects, but none that seem related to prisoners or bail.

We are also directed to our own authority that at least when a local Texas state judge is acting in a judicial capacity, the judge "is not considered a local governmental official whose actions are attributable to the county." *Davis*, 565 F.3d at 227 (quoting *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995)). Though this specific precedent was not considered in the *ODonnell* opinions, this court held that bail schedules were not promulgated by judges acting in a judicial capacity. *ODonnell I*, 892 F.3d at 155–56.

If our analysis were completely *de novo*, we would hesitate to say any of that makes the County Court Judges policymakers for the County in matters of bail. The County at least has a plausible argument that the function at issue is part of the administration of the state judicial system. Specifically, it

contends that since the Supreme Court has already held that bail hearings in Texas start the adversary judicial proceeding, then the policy at issue here, adherence to a bail schedule, relates to the administration of judicial proceedings. *Rothgery*, 554 U.S. at 213. Misdemeanor defendants convicted in a county court may appeal to a Texas court of appeals. *See* TEX. CODE CRIM. PRO. art. 44.02. Further, any criminal defendant may "petition the Court of Criminal Appeals for review of the decision of a court of appeals." *Id.* art. 44.45(b)(1). That progression of convictions from county court through the state court system does show the originating court is also part of that system. Of course, the question here is whether these judges acted as policymakers for the County or for the State in adopting the bail schedule.

Regardless of any argument that County Court Judges, like the District Court Judges, should be considered part of the state judicial system, we do not see a distinction between the judges for the Dallas County Court and those for the Harris County Criminal Court in *ODonnell* that would justify our reaching a different conclusion. Having addressed some differences that do not distinguish, we conclude that *ODonnell I* applies, and the Dallas County Court Judges acted for their county. We are not certain of the source of their authority to make policy, but it is clear that the County Court Judges established a schedule for bail to be used for those charged with misdemeanors. We conclude that is policymaking for the County under *ODonnell I*.

## V.    *Enjoining the Dallas County Sheriff*

The district court determined that the Dallas County Sheriff was not a policymaker for any of the policies being challenged in this case, and therefore she was not a proper defendant for a municipal liability claim under Section 1983. Nevertheless, the court stated in the injunction that the "Sheriff is thus authorized to decline to enforce orders requiring payment of prescheduled bail

amounts as a condition of release for said defendants if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided." In other words, though the Sheriff had been determined not to be a proper defendant for some purposes, the court's injunction purported to extend authority to the Sheriff not to enforce noncompliant orders setting bail.

The district court relied on this court's conclusion in the related Harris County appeal that "the Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant — even if prisoners are committed 'for want of bail.'" *ODonnell I*, 892 F.3d at 156. The Plaintiffs are little concerned with the finding that the Sheriff is not a policymaker but present several arguments that she should be a defendant and subjected to compulsion by the injunction.

We again look to the precedential *ODonnell* opinions for any effect on our analysis of the issue. We initially concluded in that appeal that the Harris County Sheriff was not a policymaker for the decisions creating unconstitutional procedures for determining post-arrest detention and that the Sheriff had to enforce the orders regarding detainees. *ODonnell*, 882 F.3d at 538. On appeal, the Plaintiffs find significance in two revisions we made on rehearing. One is our insertion of the following italicized phrase: "We agree with the County that its Sheriff is not an appropriate party *for attaching municipal liability*, however. The Sheriff does not have the same policymaking authority as the County Judges." *Compare id.*, *with ODonnell I*, 892 F.3d at 156. The other change was that our first opinion concluded that "the County Sheriff cannot be sued under § 1983." *ODonnell*, 882 F.3d at 538. We rephrased on rehearing: "the County Sheriff does not qualify as a municipal policymaker under § 1983." *ODonnell I*, 892 F.3d at 156.

No. 18-11368

We do not explore all the possible interpretations of the removal of certain language in *ODonnell*. Certainly, *ODonnell I* made precedential holdings that the Harris County Sheriff was not a policymaker for the issues regarding bail presented and, thus, also not a proper defendant for imposing municipal liability. On the other hand, *ODonnell I* did not hold that the Sheriff is not a proper party for any purpose in proceedings such as those.

In this Dallas County case, the district court held that the Sheriff was not a policymaker and thus not a proper defendant for the Section 1983 claim. The district court, though, did not yet rule on the motion to dismiss the Sheriff. By extending authority to the Sheriff in the injunction to refuse to honor certain court orders, the district court considered it worthwhile to involve the Sheriff in some fashion in the injunctive relief.

Few circuit court opinions have reviewed injunctions against a sheriff to prevent carrying out a judge's unconstitutional orders. We see no basis, though, to conclude that enjoining a sheriff from enforcing unconstitutional orders depends on whether a sheriff is a policymaker for purposes of municipal liability. Some legal lagniappe came the Plaintiffs' way after oral argument that allowed their identifying in an appropriate Rule 28(j) letter that the Sixth Circuit held a county sheriff in Tennessee could be enjoined so as to bar that official from "detaining any person on misdemeanor probation . . . based on a secured financial condition of release." *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 993 (6th Cir. 2019) (alteration in original). That court identified two issues within the question of whether *Ex parte Young* would allow the sheriff to be enjoined. First was whether the sheriff was a state or a county official. *Id.* at 994–95. Second, if the sheriff was a state official, then the application of *Ex parte Young* had to be analyzed. *Id.* at 994–97.

In discussing the significance of characterizing the sheriff as either a state official or a county official, the court recognized that the issue ultimately

31

did not affect the appeal. *Id.* at 994–95. If a state official, the sheriff could be enjoined pursuant to *Ex parte Young*. *Id.* at 994. If a county official, then "neither sovereign immunity, qualified immunity, nor any other defense stands in the way at this stage of the case." *Id.* at 994–95.

The *McNeil* court held that the sheriff there was acting as a state official. *Id.* at 995. Determinative was the fact that the sheriff was enforcing state law when he undertook the challenged action. *Id.* "When a county official commits an allegedly constitutional violation by 'simply [] complying with state mandates that afford no discretion, they act as an arm of the State,' not the county." *Id.* (alteration in original) (quoting *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999) (analyzing whether county official was proper defendant under Section 1983)).[5] Because he had no authority to release probationers unless notified by a county judge, he was complying with Tennessee mandates that afforded him no discretion. *Id.* Accordingly, the court held the sheriff was a state official when "detaining probationers under judge-set bail amounts." *Id.* This meant that *Ex parte Young* would control whether an injunction against the sheriff was proper.

The *McNeil* court then addressed *Ex parte Young*. *Id.* The injunction allowed "the county and sheriff to enforce bail accompanied by evidence of the probationer's ability to pay, the necessity of detention, and the alternatives to bail." *Id.* at 993. In the Sixth Circuit, *Ex parte Young* has been interpreted to require that a suit be "against a public official 'actively involved with administering' the alleged violation." *Id.* at 995 (quoting *Doe v. DeWine*, 910 F.3d 842, 849 (6th Cir. 2018)). Because "Tennessee statutes command that

---

[5] Tennessee law required the sheriff to "'obey the lawful orders and directions of the court[s]' as well as to '[t]ake charge and custody' of the county jail 'and of the prisoners there in . . . and keep them . . . until discharged by law.'" *Id.* (alterations in original) (quoting TENN. CODE ANN. § 8-8-201(a)(2)(A), (a)(3)).

involvement when they place the sheriff in charge of keeping detainees in the county jail," the sheriff could be enjoined under *Ex parte Young*. *Id*.

The Sixth Circuit rejected the sheriff's counterarguments. The sheriff argued that the judges' bail-settings were the real violation rather than his detention of probationers. *Id*. Accordingly, the plaintiffs should have sued the judges themselves. *Id*. at 996. The court explained "that an alleged violation may involve two actors and the potential immunity of one does not necessarily free the other from suit." *Id*. at 995. The plaintiffs were *also* free to sue the judges, but that did not prevent them from suing the sheriff. *Id*. at 996. As the enforcer of the order retaining a probationer in jail absent providing bail, the sheriff was sufficiently involved to be enjoined. *Id*.

In this case, two responses to the Plaintiffs' Rule 28(j) letter about *McNeil* were filed, with a particular focus on statements in the opinion about the possibility of absolute immunity of the judges involved. The Sixth Circuit recognized that the possible immunity of one defendant does not preclude suit against another. *Id*. at 995. Further, we have already held in our related *ODonnell* litigation that, because the judges' adoption of bail schedules for general application made them policymakers as to that act, the judges' conduct fell outside their judicial capacity. *ODonnell I*, 892 F.3d at 155.

Just as with the sheriff in the Sixth Circuit opinion, we conclude that the Plaintiffs can sue the Sheriff here regardless of whether she is considered a state or a county official. *See McNeil*, 945 F.3d at 994–95. If the Sheriff is a county official and also is not acting as "an arm of the state," then the Eleventh Amendment does not apply at all. *See Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.*, 943 F.3d 265, 269–70 (5th Cir. 2019). Further, regardless of whether the Sheriff is a proper defendant for purposes of creating municipal liability under Section 1983, the Sheriff as a county official would nonetheless remain amenable to an injunction that prevents her enforcement of measures violative

of federal law. Likewise, even if the Sheriff is acting as a state official and the Eleventh Amendment therefore *might* bar suit against her, the *Ex parte Young* exception permits enjoining her. *See McNeil*, 945 F.3d at 994–95. Neither the Plaintiffs nor the Sheriff meaningfully briefed this issue. Nevertheless, what follows explains that even if the Eleventh Amendment applies to the Sheriff acting as an arm of the State of Texas, she is not protected by sovereign immunity as to these claims.

To summarize our discussion when evaluating the *Ex parte Young* exception for its application to the District Court Judges, suits for injunctive or declaratory relief may be brought against a state official acting in violation of federal law if there is a "sufficient 'connection' to enforcing an allegedly unconstitutional law." *In re Abbott*, 956 F.3d at 708. "If the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and 'our *Young* analysis ends.'" *Id.* at 709 (quoting *City of Austin*, 943 F.3d at 998). A concrete statutory duty to enforce the challenged action is sufficient to invoke the *Ex parte Young* exception to sovereign immunity. *See Morris*, 739 F.3d at 746.

In *ODonnell I*, we identified several relevant statutory authorities governing county sheriffs in Texas to show that they were not municipal policymakers. *ODonnell I*, 892 F.3d at 156. We explained that a Texas "Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant — even if prisoners are committed 'for want of bail.'" *Id.* Accordingly, sheriffs in Texas are not authorized "to avoid executing judicial orders imposing secured bail by unilaterally declaring them unconstitutional." *Id.*

In the *Ex parte Young* context, those same statutes show that the sheriff has a statutory duty to enforce judicially imposed bail schedules. Under Texas law, sheriffs are legally obligated to "execute all lawful process issued to the

officer by any magistrate or court." TEX. CODE CRIM. PRO. art. 2.13. If a sheriff refuses or neglects to execute lawful process, the sheriff is "liable to a fine for contempt . . . at the discretion of the court." *Id.* art. 2.16. Texas law also provides that a prisoner sent to jail by the courts "shall be placed in jail by the sheriff." *Id.* art. 2.18. The sheriff cannot release the prisoner from jail except to "give the person arrested a reasonable time to procure bail." *Id.* Consequently, the sheriff is statutorily prohibited from releasing an arrestee who cannot afford to pay the bail amount. *Id.*

The claim in the present case is that the Sheriff enforces the orders entered by judges that require cash bail by leaving the arrestees in jail absent bail being provided. The complaint states: "After arraignment, the officers and employees of the Sheriff's Department are authorized by County policy to accept money bail as predetermined by the schedule and to release arrestees who pay money bail in accordance with the bail schedule." Further, arrestees who inform "the Sheriff's deputies that they cannot afford to make the monetary payment will be assigned to a housing unit and confined to a jail cell after arraignment." The Plaintiffs summarize the connection between the bail decisions and the Sheriff's actions this way:

> The Magistrates' custom of requiring secured money bail as a condition of release in every case, the Judges' acquiescence in this custom, and the Sheriff's policy of enforcing unconstitutional orders conditioning release on a monetary payment cause systemic and automatic wealth-based detention in Dallas County.

These allegations are sufficient to satisfy the requirements of *Ex parte Young.* Texas statutes create concrete duties compelling the sheriff to enforce the judicially imposed bail schedules. The Sheriff's obligation to commit indigent arrestees to jail under Article 2.18 of the Texas Code of Criminal Procedure is surely "compulsion or constraint" of those arrestees. *See K.P.*, 627 F.3d at 124. Thus, we agree with the analysis of the Sixth Circuit in *McNeil*,

and similarly recognize that the Sheriff in this case carries out her statutory duties under Texas law "by detaining arrestees in the county jail." *See McNeil*, 945 F.3d at 996; TEX. CODE CRIM. PRO. art. 2.18.  As in *McNeil*, if bail is unconstitutionally required, the sheriff's "constitutional violation is detention on an improperly determined bail amount." *McNeil*, 945 F.3d at 996.

Enjoining the Sheriff is therefore permissible under *Ex parte Young*.  It is argued that the desired injunction would require the Sheriff and her deputies and staff to perform the equivalent of summary appellate review of each detention order that required bail in order to decide whether it complied with the injunction.  The current injunction "authorized" the Sheriff "to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release for said defendants if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided."  It also provided that the Sheriff "must treat the limitations period on . . . holds as beginning to run" at a particular time.

The permissible limit of any injunction under *Ex parte Young* is set by a legal fiction: "when a federal court commands a state official to do *nothing more* than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (emphasis added).  Any injunction here against the Sheriff must be constrained in that manner.  We conclude that the present language of the injunction is too imprecise, leaving the Sheriff in the equivalent position of an appellate court reviewing the validity of bail orders.  We invalidate the language of the injunction as it applies to the Sheriff.  Should a revised injunction impose any duties upon that officer, the duties must be made as objective and narrowly defined as possible.

No. 18-11368

We disagree with the County Defendants that enjoining the Sheriff is an invalid substitution for enjoining the appropriate actors, the judges. True, Section 1983 has limits on actions against judges, but we have already held that under *ODonnell I*, that barrier does not apply to the actions taken on bail schedules such as those in this case. *ODonnell I*, 892 F.3d at 155. Because she is "statutorily tasked with enforcing the challenged law," the Sheriff when enforcing state law would be a proper defendant under *Ex parte Young*. *See In re Abbott*, 956 F.3d at 709. The district court has authority to order the Sheriff to refrain from violating federal law when exercising a state statutory duty to enforce the bail schedules. *See* TEX. CODE CRIM. PRO. arts. 2.13, 2.16, 2.18.

## VI.    *Substantive-due-process claim*

It has taken us a while, but we have finally arrived at our review of the merits of the injunction. All parties have some objections, but the *ODonnell* opinions foreclose most.

Our decisions as to bail for misdemeanor criminal arrestees in Harris County resolved several issues. First, the county's procedures violated the due-process rights of the arrestees. *ODonnell I*, 892 F.3d at 161. Next, we applied intermediate scrutiny to the equal-protection claim, concluding that "although the County had a compelling interest in the assurance of a misdemeanor detainee's future appearance and lawful behavior, its policy was not narrowly tailored to meet that interest." *Id.* at 162. The interest protected was created in part by the state constitution: "prisoners shall be bailable by sufficient sureties." *Id.* at 158 (quoting TEX. CONST. art. 1, § 11). The fact that it was a state-created right did not leave the federal due-process interest to be resolved afresh in the current case. "Liberty interests protected by the due process clause can arise from two sources, 'the Due Process Clause itself and the laws

37

of the States.'" *Id.* at 157 (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The *ODonnell0* due-process rulings apply here.

The current Plaintiffs want more. They claim, first, that they are entitled to injunctive relief based on their fundamental right to be free from wealth-based detention. Relatedly but separately, the Plaintiffs claim there is a substantive-due-process right to pretrial liberty. It is argued that an arrestee who cannot afford cash bail may not be incarcerated unless the Magistrate Judge finds "that doing so is necessary to serve an important government interest." We will discuss some of the precedents that the Plaintiffs urge upon us to determine if there is clarity to the right they assert.

The Plaintiffs do not have much authority directly on point, but they rely on several precedents on related issues involving indigents in the criminal justice system. The Plaintiffs characterize the caselaw as involving the convergence of equal-protection and substantive-due-process principles that prevents individuals from being "subjected to imprisonment solely because of [their] indigency." *See Tate v. Short*, 401 U.S. 395, 398 (1971). Many precedents identify the rights of indigents in other situations, though not in the context of bail for arrestees, but they are quite useful.

In *Tate*, an indigent was jailed because he could not pay a fine. The Court held this was discrimination based on indigency that was unconstitutional under the Equal Protection Clause. *Id.* at 397–98. The Court relied on *Williams v. Illinois*, 399 U.S. 235 (1970). *Id.* at 398. In *Williams*, "[t]he narrow issue raised [was] whether an indigent may be continued in confinement beyond the maximum term specified by statute because of his failure to satisfy the monetary provisions of the sentence." *Williams*, 399 U.S. at 236. The answer was "no." *Id.* at 245. The Court took pains to limit its holding, such as stating that the "fact that an indigent in a particular case may be imprisoned for a longer time than a non-indigent convicted of the same

offense does not, of course, give rise to a violation of the Equal Protection Clause." *Id.* at 243. The important point was that the maximum term was extended solely due to indigency.

The final Supreme Court opinion in the Plaintiffs' triad is *Bearden v. Georgia*, 461 U.S. 660 (1983). That case involved the revocation of probation of someone whose sentence included an obligation to pay a fine and restitution. *Id.* at 662. The individual failed to make the required payments due to indigency. The Court held that revocation of probation *solely* for that reason violated "[d]ue process and equal protection principles [that] converge in the Court's analysis in these cases." *Id.* at 665. The Court held that "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id.* at 672. "If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment." *Id.*

In *Bearden*, the Court said the question of whether there were circumstances when the individual's status as an indigent could be considered when deciding whether to revoke probation was "substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine." *Id.* at 666. In a footnote to that statement, the Court referred to its "previously applied considerations of procedural and substantive fairness to probation and parole revocation proceedings." *Id.* at 666 n.7 (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). "Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay." *Id.* at 672. The *Bearden* Court explained that "[t]o do otherwise would deprive the probationer of his conditional freedom simply

because, through no fault of his own, he cannot pay the fine.  Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672–73.

Though none of this Supreme Court triad concerns bail, this court *en banc*, writing before any of these Supreme Court opinions, held that "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *Rainwater*, 572 F.2d at 1057.  That decision is our fullest explanation prior to the *ODonnell* opinions of issues similar to those facing us now.  We stated that

> [r]esolution of the problems concerning pretrial bail requires a delicate balancing of the vital interests of the state with those of the individual.  Florida has a compelling interest in assuring the presence at trial of persons charged with crime.  Yet such individuals remain clothed with a presumption of innocence and with their constitutional guarantees intact.

*Id.* at 1056 (footnote omitted).

Our *en banc* court did not have the benefit of any of the opinions we have discussed that address constitutional rights of those who have already been convicted of an offense not to have their punishment increased as a result of indigency.  The basic dispute in *Rainwater* was whether new Florida rules would invariably result in detaining indigents who could not afford money bail, or would a rule requiring "'all relevant factors' be considered in determining 'what form of release is necessary to assure the defendant's appearance'" allow indigents to be released?  *Id.* at 1058.  The constitutional standard against which the likely results were measured was this: "in the case of an indigent, whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restraint."  *Id.*  The Plaintiffs urge us to find that these principles have been ignored in the injunction here.

No. 18-11368

We considered *Rainwater* in our *ODonnell* opinions. We held that *Rainwater* supported the district court's conclusion that Harris County judges were violating the constitution by basing the financial terms for release on "predetermined amounts beyond a person's ability to pay and without any 'meaningful consideration of other possible alternatives.'" *ODonnell I*, 892 F.3d at 161 (quoting *Rainwater*, 572 F.2d at 1057). There was no implication that the district court erred by not requiring more than a procedural remedy. *Rainwater* itself was much about procedure: would the new Florida rules for establishing the terms for release of arrestees lead to unconstitutional incarceration? It required "meaningful consideration of other possible alternatives" to money bail. *Rainwater*, 572 F.2d at 1057. We concluded that the Florida *procedures* did not themselves indicate a likely failure to uphold the rights of indigents. We interpret our *ODonnell* opinions to be making the same conclusions about the Harris County injunction whose terms we suggested. *See ODonnell I*, 892 F.3d at 164–66.

Finally, we discuss a more factually on-point decision than the *Williams–Tate–Bearden* group. In the case, the Court confronted a facial challenge to the federal Bail Reform Act that allowed detention of individuals pending trial for certain serious offenses only "if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *United States v. Salerno*, 481 U.S. 739, 741 (1987) (quoting 18 U.S.C. § 3142(e)). The Court stated: "'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* at 746 (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952) ("shocks"), and *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937) ("implicit")).

41

No. 18-11368

The Court did not make either characterization, *i.e.*, "shock" or "implicit rights," central to its analysis. Instead, it focused on whether the Bail Reform Act led to improper "punishment before trial." *Id.* at 746–47 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Court concluded that detention under the Act was not punitive but instead was regulatory. *Id.* at 747. We consider the following especially informative:

> As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment. To determine whether a restriction on liberty constitutes impermissible punishment or permissible regulation, we first look to legislative intent. Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on "'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'"

*Id.* at 746–47 (alterations in original) (citations omitted).

This punitive/regulatory dichotomy is central in the Court's analysis. The Court rejected arguments that the regulatory principle was being stretched too far. Instead, the Court said it "cannot categorically state that pretrial detention 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* at 751 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)). Though recognizing "the importance and fundamental nature" of a right to liberty, the Court summarized that its "cases hold [that] this right may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *Id.* at 750–51.

Of significance, the Court held that the Bail Reform Act provided "protections [that] are more exacting than those we found sufficient in the juvenile context, and they far exceed what we found necessary to effect limited

postarrest detention in *Gerstein v. Pugh*." *Id.* at 752 (citations omitted). Thus, what was approved in *Salerno* exceeded the constitutional minimum.

Some debate exists as to whether the *Salerno* Court was applying heightened scrutiny to the detention of individuals before trial. We find conflicting authority. The Plaintiffs favor a Justice Scalia opinion placing *Salerno* within a

> line of cases which interprets the Fifth and Fourteenth Amendments' guarantee of "due process of law" to include a substantive component, which forbids the government to infringe certain "fundamental" liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.

*Reno v. Flores*, 507 U.S. 292, 301–02 (1993). A different view was expressed in an Eleventh Circuit opinion relied upon by the Plaintiffs for other reasons, where the court stated that "the *Salerno* Court's analysis was much closer to a relatively lenient procedural due process analysis than it was any form of heightened scrutiny." *Walker*, 901 F.3d at 1262.

We are assisted as well by Tenth Circuit Chief Judge Tymkovich's view that when the *Salerno* Court stated that "the detention was not 'excessive in relation to the regulatory goal Congress sought to achieve,'" the "language did not seem like anything close to strict scrutiny." Hon. Timothy M. Tymkovich, *et al.*, *A Workable Substantive Due Process,* 95 NOTRE DAME L. REV. 1961, 1996 (2020). One of the *amici* in this case said as much by helpfully acknowledging that no Supreme Court opinion has yet explicitly held that pretrial detention is subject to strict scrutiny under substantive due process, though the *amici* urged that as the needed standard.

Finally, as to *Salerno*, the Plaintiffs quoted in their briefing the Supreme Court's summary near the end of the opinion: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. That pronouncement is joined by other,

similar Supreme Court statements: "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Nonetheless, as we explained, the *Salerno* Court examined whether the detention allowed by the Bail Reform Act amounted to punishment before trial and held that it did not. *Salerno* does not support the argument that arrestees have a right to release absent a finding that cash bail is necessary even when that indigent cannot afford it.

In seeking to make sense of all this, we start with the fact that substantive due process is not the clearest of Supreme Court doctrines, a difficulty perhaps suggested by the oxymoronic nature of its name. Some even see it as an awkward effort to bypass early Supreme Court rejection of the Fourteenth Amendment's Privileges and Immunities Clause as protecting many substantive rights but, regardless, the caselaw in this area is "contradictory, imprecise," and, well, "messy." *See* Tymkovich, *Substantive Due Process*, *supra* at 1962 & n.2, 1963, 1978. Chief Judge Tymkovich interprets the caselaw to support different standards for challenges against executive, legislative, and judicial actions, though the analytical lines are often breached. *Id.* at 1964. We are reviewing a challenge to a judicial decision, which Chief Judge Tymkovich concludes will "violate substantive due process only if it is an 'arbitrary or capricious' abuse of power." *Id.*; *see also id.* at 1984. We do not adopt the suggested construct for the variety of substantive-due-process claims, though the Supreme Court's doing something along those lines would bring clarity. We do find the journal article to be an edifying effort both to explain how the doctrine connects to the Fourteenth Amendment's Due Process Clause and to bring some order to the caselaw.

The Defendants suggest substantive due process is a disfavored doctrine at least to the extent that when some other provision in the Constitution "provides an explicit textual source of constitutional protection," that provision

must be used instead of substantive due process principles. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The Eighth Amendment is offered by the Defendants as that explicit provision: "Excessive bail shall not be required." U.S. CONST. amend. VIII. The district court concluded that the Plaintiffs were improperly using substantive due process "as an end-around of the Eighth Amendment."

Our research has not shown Fifth Circuit opinions applying the "explicit textual source" bar to substantive due process claims other than in the context of the Fourth Amendment excessive force claims and for takings claims. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 219–20 (5th Cir. 2018) (Fourth Amendment); *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 247–49 (5th Cir. 2000) (takings). One of our precedents stated that *Graham* did not mean "that the applicability of the more explicit provision pre-empts due process protections. Moreover, it is clear that a particular action may implicate more than one constitutional protection." *John Corp. v. City of Hous.*, 214 F.3d 573, 582 (5th Cir. 2000) (citation omitted).

Additional support for not applying the Eighth Amendment to these claims comes from the fact that the *ODonnell* opinions did not do so. In light of our conclusion on this issue, namely, that the *ODonnell* precedents reject the claim that a broader injunction is required under substantive due process, we do not further consider the *Graham* argument.

A brief summary of what we have decided so far. There is no clear support in the precedents on which the Plaintiffs rely for the expansive liberty right for indigents that the Plaintiffs claim. The applicable standard of scrutiny that applies to the claim is unclear. We reject that we must analyze the claim under the Eighth Amendment.

Next is our review of whether this circuit made relevant pronouncements on the issue in the *ODonnell* opinions. In the Plaintiffs' view, their claimed

No. 18-11368

right to pretrial liberty requires broader injunctive relief than was ordered as to bail practices in Harris County. We start with some clarification about the claims in *ODonnell*. Though the claims were brought under procedural due process and equal protection, this court's opinions made statements about substantive due process. We quote our revised first opinion that the procedural defect was a "mechanical application of the secured bail schedule." *ODonnell I*, 892 F.3d at 163. What was needed was "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker." *Id.* As a result, the broader relief in the district court's injunction, which we characterized as "the outright elimination of secured bail for indigent misdemeanor arrestees" was too broad. *Id.*

We understand that the Plaintiffs are not arguing that indigents can never be detained even if they could not afford cash bail; instead, they argue that the Magistrate Judge must find that the State has a sufficiently strong interest in order to hold an indigent who cannot afford cash bail. That is what the *ODonnell* plaintiffs argued too. Nonetheless, we interpret our statements in *ODonnell I* to mean that the effect of a provision such as ordered by that district court was to eliminate cash bail for most indigents. *See ODonnell I*, 892 F.3d at 163. We turn now to what had been ordered. In the superb, extraordinarily thorough explanation by Chief District Judge Rosenthal of the facts and law, making the work of the Fifth Circuit so well informed, the court imposed the *Bearden* standard as part of what was required in *ODonnell*:

> Under the Equal Protection Clause as applied in the Fifth Circuit, pretrial detention of indigent defendants who cannot pay a financial condition of release is permissible only if a court finds, based on evidence and in a reasoned opinion, either that the defendant is not indigent and is refusing to pay in bad faith, or that no less restrictive alternative can reasonably meet the government's compelling interest.

46

No. 18-11368

*ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1140 (S.D. Tex. 2017). The context for that quoted holding in *ODonnell I* was that what those plaintiffs were seeking was a "substantive due process right to be free from any form of wealth-based detention." *ODonnell I*, 892 F.3d at 163.

We wrote that the remedy of eliminating cash bail for indigents "makes some sense if one assumes a fundamental substantive due process right to be free from any form of wealth-based detention. But, as the foregoing analysis establishes, no such right is in view." *Id.* In other words, no fundamental right to be categorically free from wealth-based detention existed. *See id.*

A later motions panel quoted this language favorably. *See ODonnell II*, 900 F.3d at 225. That second appeal came after the *ODonnell I* court remanded and the district court entered a revised injunction. *Id.* at 222. On appeal from that ruling, a motions panel entered a published opinion granting a defense motion to stay sections of the revised injunction pending final resolution of the appeal. *Id.* at 221–23, 228. According to the motions panel, the district court exceeded this court's earlier mandate because its new injunction ordered "release of an indigent arrestee with no strings attached and before an opportunity for the County to provide the strings," which the panel held violated *ODonnell I*. *Id.* at 225. Later, newly elected and differently minded Harris County judges moved to dismiss the appeal, and we did so. Dismissal made the motions panel opinion our final published word on the case.

The Plaintiffs here argue that the motions-panel opinion has no precedential value. "[A] motions panel order is not binding" on the later merits panel. *Cimono v. Raymark Indus., Inc.*, 151 F.3d 297, 311 n.26 (5th Cir. 1998). We need not analyze the precedential reach of a motions panel opinion today. Binding or not, we agree with the motions panel's treatment of *ODonnell I* as rejecting the same substantive-due-process right that the Dallas County Plaintiffs urge we use to grant a broader injunction.

47

No. 18-11368

"[A] fundamental substantive due process right to be free from any form of wealth-based detention" was not "in view" in *ODonnell I*, 892 F.3d at 163. The same substantive-due-process right is being asserted in this appeal. The Plaintiffs want any injunction to include a requirement that, before cash bail could be ordered, as the district court described it, "a substantive finding [be made] by the Magistrate Judges that no other alternative to secured release would serve the State's interest before detaining an individual before trial."

These Plaintiffs have a right to pretrial liberty that cannot be taken by the State without constitutionally adequate justification. Supreme Court decisions, such as *Salerno*, and our own *Rainwater* opinion support such a right. How to evaluate the rights of indigent arrestees is central to this appeal, but it also was in *ODonnell*. The Plaintiffs assert that cash-bail cannot be required when an indigent arrestee cannot pay, absent a finding that there is no other alternative that would serve the State's interest. The *ODonnell I* court held that such a right did not exist, and that statement was not *dicta* because it explained the rejection of a remedy that in the court's view would effectively eliminate cash bail for indigents. The procedural protections provided for in *ODonnell I*, and also the motions-panel decision in *ODonnell II*, which were replicated in the injunction issued in this case are what this circuit has held are proper relief.

Other issues raised by the Defendants, including whether we must abstain due to *Younger v. Harris*, 401 U.S. 37, 43–44 (1971), and whether injunctive relief here excessively intrudes into pretrial judicial decisions under *Tarter v. Hury*, 646 F.2d 1010, 1013–14 (5th Cir. Unit A June 1981), were adequately addressed in an earlier Harris County opinion. *ODonnell I*, 892 F.3d at 156–57. They cannot be reconsidered here.

\* \* \*

48

No. 18-11368

Suit against the Criminal District Court Judges is barred by sovereign immunity because they are officials of the State of Texas and the *Ex parte Young* exception does not apply, and also because the Plaintiffs lack standing as to them. The Sheriff can be enjoined to prevent that officer's enforcement of measures violative of federal law, regardless of whether the sheriff is a proper defendant for municipal liability purposes under Section 1983. So may the Magistrate Judges.

We AFFIRM the injunction except for any application to the District Court Judges and for its articulation of the Sheriff's responsibilities as to bail orders. We REMAND for further proceedings consistent with this opinion.